UNITED STATES BANKRUPTCY COURT                              **NOT FOR PUBLICATION**

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                          :
                              Chapter 7

ROBERT GREENSLADE,                              :
                              Case No. 05 B 23404 (ASH)

        Debtor.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - x

**A P P E A R A N C E S :**

**ROBERT GREENSLADE**
**Debtor** *pro se*
**12 South Delaware Drive**
**Central Nyack, NY 10960**

**STEVEN J. BAUM, P.C.**
**Attorneys for Secured Creditor**
   **Mortgage Electronic Registration Systems, Inc.,**
   **as nominee for First National Bank of Arizona c/o**
   **Homecomings Financial Network**
**By: Amy E. Przewozny, Esq.**
**220 Northpointe Parkway, Suite G**
**Amherst, NY 14228**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION FOR RECONSIDERATION

       By notice of motion dated July 12 and docketed July 13, 2005 Mortgage Electronic Registration Systems, Inc. as nominee for First National Bank of Arizona c/o Homecomings Financial Network ("Secured Creditor") moved to terminate the automatic stay in respect of the debtor's residential real estate in Nyack, New York.  The Secured Creditor was granted a mortgage on the debtor's home to secure a note in the principal amount of $403,750 dated August 29, 2003.  The debtor has been in default under the note for almost two years, and the mortgage loan is contractually due for the December 1, 2003 mortgage payment.  The motion asserts that as of July 12, 2005 the unpaid principal on the note was

$403,259.08 with accrued interest thereon in the amount of $58,839.78 plus late charges in the amount of $1,055.53, for an estimated amount due the Secured Creditor of $463,154.39. The motion attached a property valuation showing the value of the property to be $465,000.

After obtaining a foreclosure judgment, the Secured Creditor scheduled a foreclosure sale for December 16, 2004, which was forestalled by the debtor's first bankruptcy filing under Chapter 13, case no. 04 B 20710 (ASH). That case was dismissed on February 1, 2005. A second foreclosure sale was scheduled on March 17, 2005, which was forestalled by the debtor's second bankruptcy filing, this time under Chapter 7, case no. 05 B 20161 (ASH). On May 3, 2005 an order granting Secured Creditor relief from the automatic stay was entered by this Court. A third foreclosure sale was scheduled for July 5, 2005, which was forestalled when the debtor filed the instant case under Chapter 7. This case was filed on July 1, 2005, notwithstanding that the prior Chapter 7 case was still open and was not dismissed until September 14, 2005.

Neither the Chapter 7 Trustee nor the debtor filed or delivered to Chambers any opposition to the Secured Creditor's July 12 motion to lift the automatic stay. Because of the debtor's inordinate default in his obligations to the Secured Creditor, his repeat bankruptcy filings on the eve of three foreclosure sales and his failure to file or present any written or oral opposition to the motion, the Court granted the relief sought by the Secured Creditor and entered an order granting relief from the automatic stay, barring the debtor from filing another bankruptcy case for 180 days and providing that the automatic stay would not be invoked as to the Secured Creditor by any bankruptcy filing by the debtor or any other person claiming an interest in the mortgaged property within 180 days.

The debtor has now filed a motion to reconsider the Court's August 18, 2005 order "as too broad, too vague, & against the 14th Amend." Most of this *pro se* debtor's motion is unintelligible or baseless and merits no response. The Court will make the following responses to certain points raised by the debtor in his motion to reconsider.

A motion for relief from the automatic stay is in the nature of an *in rem* proceeding affecting the property subject to the Secured Creditor's mortgage. The granting of prospective relief from the automatic stay limited to the specific property covered by a secured creditor's mortgage lien has been recognized as Constitutionally appropriate in numerous decisions to prevent manifest abuse of the bankruptcy process by debtors whose extraordinary arrearages and serial bankruptcy filings clearly manifest the debtor's bad faith. *See, In re Felberman*, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995) (in refusing to vacate a foreclosure sale conducted after the issuance of an order with prospective relief, this Court recognized that ("[t]he filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code" (citations omitted)); *In re Amey*, 314 B.R. 864, 869 (Bankr. N.D.Ga. 2004) ("The remedy [of *in rem* relief] is granted when there has been an abuse of the bankruptcy laws and of the automatic stay resulting from the filings of multiple bankruptcy cases; abuse is shown when the improper or unsuccessful prosecution of a series of cases (or the failure to prosecute them at all) demonstrates either a clear inability to obtain confirmation of, and to make required payments under, a feasible chapter 13 plan that provides lawful treatment of the secured lender's claim or the lack of a good faith intent to do so"); *In re Feldman*, 309 B.R. 422, 428, 426 (Bankr, E.D.N.Y. 2004) (Even though the court noted that "[w]hile the Debtor's possessory interest in the Property is sufficient to invoke the protections of 11 U.S.C. § 362, it is not equivalent to *in rem* jurisdiction and does not in and of itself provide a basis for this Court to exercise *in rem* jurisdiction over the Property"; nonetheless, the court concluded that, "[b]ased on the foregoing caselaw and under Section 105 of the Code, this Court believes that it has the power to provide a creditor with prospective relief from the automatic stay where it is clear that a debtor has filed successive bankruptcy petitions to stay foreclosure sales without the intention of completing or without having the ability to complete the bankruptcy process in good faith" (footnotes omitted)); *In re Rowe*, 239 B.R. 44, 54 (Bankr.D.N.J.1999) (granting prospective relief from the automatic stay after third bankruptcy filing, ruling that "any future

bankruptcy filings by debtors will not reimpose the section 362 stay as respects the within Property"); *In re Abdul-Hasan*, 104 B.R. 263, 266 (Bankr.C.D. Cal.1989) ("This Court finds that the [prospective] order granted to Fireman's Fund in the prior Chapter 13 case can and does relieve Fireman's Fund of any responsibility to seek relief from the automatic stay prior to holding its foreclosure sale so long as a subsequent bankruptcy is filed by this debtor, her husband and co-debtor in the prior case, or their assignees or successors in interest").  *See also*, *In re Roeben*, 294 B.R. 840, 847-850 (Bankr. E.D.Ark. 2003) (in finding flagrant abuses by the debtor and spouse who filed six bankruptcy cases, kept foreclosure proceedings in abeyance and kept their residence for five years without making a mortgage payment, the court, *inter alia*, granted prospective *in rem* relief as to the property at issue for a period of six months); *In re Yimam*, 214 B.R. 463,465, 466, 464-467 (Bankr. D.Md.1997) (after finding "a continuous use of the bankruptcy system for the purpose of forestalling foreclosure", court granted prospective relief which it called "sufficiently like an equitable servitude," explaining that the order "may bind subsequent purchasers of the property just like an equitable servitude"); *In re Snow*, 201 B.R. 968, 977-978 (Bankr. C.D.Cal. 1996) (concluding that *in rem* relief was appropriate under the circumstances, the court granted relief from the automatic stay as to the debtor and any future owner of the property at issue for a period of 180 days on notice of the order).

For other relevant cases, *see also, In re Casse*, 198 F.3d 32, 3327 (2nd Cir. 1999) (among other things, the Court of Appeals cited to *In re Felberman*, *supra*, for authority to establish that serial filings with the sole intent to frustrate foreclosure proceedings are an abuse of the Bankruptcy Code and upheld lower court's refusal to vacate a foreclosure sale and dismissal of debtor's new filing *nunc pro tunc* to the date of filing primarily based upon intent behind bankruptcy judge's prior order of "dismissal with prejudice"); *In re Flores*, 291 B.R. 44, 59 (Bankr. S.D.N.Y. 2003) (this Court recognized that "[i]n rare cases of persistent abuse of the bankruptcy laws by a debtor seeking to avoid foreclosure, with no genuine intention to confirm a plan of reorganization, this Court has entered orders of relief from

the automatic stay or dismissal with prejudice such that the filing of a future bankruptcy by the debtor or other persons claiming an interest in the property in question will not invoke the automatic stay as to a specific secured creditor. It is only if the order specifically so provides that this Court would intend or contemplate that a future bankruptcy filing would not invoke the automatic stay, and then only as to a specified creditor and property"); *In re Price*, 304 B.R. 769, 774 (Bankr.N.D. Ohio 2004) (after finding that the debtor and her husband had abused the bankruptcy process by filing "tag-team bankruptcies in order to avoid Bank of America's legitimate efforts to recover their collateral," the court granted the debtor's motion to voluntarily dismiss her petition but included prospective *in rem* relief as to property at issue for a period of three hundred and sixty days). *But see, In re Norris*, 39 B.R. 85, 87 (E.D.Pa.1984) ("In my view, a bankruptcy judge in a pending proceeding simply does not have the power to determine that the automatic stay shall not be available in subsequent bankruptcy proceedings").

This debtor's conduct in respect of the Secured Creditor (including a state court proceeding resulting in a foreclosure judgment, three scheduled foreclosure sales each frustrated by a bankruptcy filing on the eve of sale, including one Chapter 13 case resulting in a dismissal and two Chapter 7 cases) amply demonstrates this debtor's lack of good faith warranting prospective *in rem* relief from further bankruptcy abuse.

The debtor suggests that "Judge Hardin NEVER read the proposed copy of the order before someone in his office 'rubber-stamped' the null and void order."   The debtor may be assured that I read the motion papers and the August 18 order with great care before personally signing the order.

The debtor asserts that, contrary to the recitation in the order, he did file an opposition with the Court prior to the hearing date.  I have no recollection and the Court has no record of any opposition filed by the debtor and no opposition is reflected on the Court's electronic docket.   If the debtor did file opposition to the motion, he could have annexed a file-stamped copy to his instant motion to reconsider, but he did not do so.

The debtor asserts that there is equity in the mortgaged property and that the Secured Creditor is adequately protected thereby, and the debtor asks the Court for more time to present his own appraisal of his property. It should be noted that the debtor's motion to reconsider is dated 9/16/05, more than sixty days after the July 13 notice of presentment. The debtor has had ample time to obtain an appraisal of his property, but none is attached to his motion. Moreover, this is the debtor's third bankruptcy filing, and the standing order of the Court would have required the debtor to provide an appraisal of his property in connection with his first filing under Chapter 13.

Finally, the debtor asserts that he has "a means of effectuating a plan of reorganization as per 11 U.S.C. section 1123 (B) (5), for there is a reasonable possibility that this Debtor can cure arrears or prepare a confirmable plan with the creditor's consent when I can get notice of the creditors' meeting and confirmation meeting." Aside from the fact that this is a Chapter 7 case in which the debtor cannot confirm a plan and debtor has not sought to convert his case to Chapter 11 or Chapter 13, the debtor has made no attempt whatever to demonstrate that he can within any time frame cure his arrears, which now exceed $60,000, or present a confirmable plan. This fact and the further facts that the debtor has made but a handful of payments on his mortgage in the last two years, is contractually due for December 2003, and has filed two prior, failed bankruptcy cases, completely undermines the debtor's credibility.

The doors of this Court are always open to a debtor, even a serial filer, who is able to demonstrate that he or she has finally found a means of proposing a confirmable plan. But it is incumbent on a debtor, such as this one, who has a long-established record of default and serial bankruptcy filings following a foreclosure judgment, to demonstrate with documented facts and figures that he or she has both the willingness and the ability to fulfill his or her contractual obligations to a secured lender. The Bankruptcy Code provides extraordinary measures for the benefit of debtors in dealing with their creditors. But the Bankruptcy Code cannot be invoked indefinitely to obstruct the state law rights of a

secured creditor where a debtor such as this one has demonstrated over a long period of time that he cannot or will not pay what is due on his mortgage.

The debtor's motion to reconsider is denied.

It is **SO ORDERED**.

Dated:  White Plains, NY
 October 5, 2005

 /s/Adlai S. Hardin, Jr.
 U.S.B.J.